```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
RAYLIN FABRE,                            :
                          Petitioner,    :
                                         :
              -v-                        :       08 Civ. 5883 (DLC)
                                         :
JUSTIN TAYLOR, SUPERINTENDENT,           :       OPINION & ORDER
GOUVERNEUR CORRECTIONAL FACILITY,        :
                          Respondent.    :
                                         :
-----------------------------------------X
```

Appearances:

Pro se petitioner:

Raylin Fabre
06-R-3740
Gouverneur Correctional Facility
P.O. Box 480
Scotch Settlement Road
Gouverneur, NY 13642

For respondent:

Andrew M. Cuomo, Attorney General of the State of New York
Alyson M. Gill, Assistant Attorney General
Paul M. Tarr, Assistant Attorney General
120 Broadway, 22nd Floor
New York, NY 10271

DENISE COTE, District Judge:

On June 30, 2008, Raylin Fabre filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in state court following entry of a plea of guilty to criminal possession of a weapon and criminal sale of marijuana. The petition was referred to the Honorable Andrew Peck, who

issued a report on January 20, 2009 ("Report") recommending that the petition be denied. For the following reasons, the Report is adopted and the petition is denied.

## BACKGROUND

As described in detail in the Report, on May 22, 2005, Fabre was involved in a shoot-out with a rival drug organization that resulted in a 15 year-old boy being shot in the arm. Fabre was indicted for weapon possession and assault. About a year later, on May 1, 2006, he was arrested and indicted on two counts of criminal sale of marijuana. Later that same month, prosecutors informed Fabre's counsel that they were presenting kidnapping charges to the grand jury, but would withdraw those charges if Fabre pleaded guilty to the weapon and drug charges with the understanding that he would be sentenced to five years' imprisonment. If Fabre refused, the prosecutors would recommend twenty-five years' imprisonment on the kidnapping charge, to be imposed consecutively to the sentences on the other charges.

On June 16, 2006, Fabre pleaded guilty to second degree criminal possession of a weapon and two counts of second degree criminal sale of marijuana, with an agreed upon aggregate sentence of five years' imprisonment. The weapon charge carried a maximum sentence of fifteen years, as Fabre acknowledged at his plea. During the plea allocution, Fabre admitted that on May 22, 2005 he discharged a loaded firearm intending to use it

unlawfully against another, and that on dates in April 2006 he had sold over four ounces of marijuana.  He admitted that his lawyers had explained his legal rights and options to him, that he was pleading guilty because he was guilty, and that he was not "under the influence of any drug[s] or alcohol."  The prosecutor represented that it would close the open grand jury investigation.

On August 10, Fabre was sentenced principally to five years' imprisonment.  He was advised of his right to appeal, but did not appeal.

On December 15, 2006, Fabre filed a pro se motion pursuant to Section 440.10 of the New York Criminal Procedure Law ("440 motion") arguing that the grand jury indictment was insufficient since no gun was ever recovered, and that his counsel was ineffective for (1) convincing him to allocute falsely that he possessed a gun, (2) advising him to plead guilty even though the prosecutor could not prove that he intended to use the gun against another person, and (3) advising him that a withdrawn plea could be used to cross-examine him at trial.  In a detailed written opinion of July 26, 2007, the judge who took his plea of guilty rejected his motion.  Leave to appeal was denied on November 8.

Fabre filed this timely petition on June 30, 2008. Following receipt of the Report recommending that his petition

3

be denied, Fabre requested two extensions of time to object to the Report. The requests for an extension were granted, and on March 19, 2009, Fabre's timely objections to the Report were received.

## DISCUSSION

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  The court must make a de novo determination of the portions of the report to which petitioner objects.  28 U.S.C. § 636(b)(1); see United States v. Oberoi, 547 F.3d 436, 453 (2d Cir. 2008) (citation omitted).  To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record."  Wilds v. United Parcel Service, Inc., 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003) (citation omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, modified the standard under which federal courts review Section 2254 petitions where the state court has reached the merits of the federal claim.  Habeas relief may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (d)(2). State court factual findings "shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. at § 2254(e)(1).

Fabre pursues four claims through his habeas petition,[1] some of which were never presented to the state court. The Report's analysis of those claims is summarized below, along with any objection made by Fabre to its analysis.[2]

1. Ineffective Assistance of Counsel

Fabre claims that his counsel was ineffective for failing to advise him that the evidence was insufficient to sustain a conviction for criminal possession of a weapon in the second degree where the prosecutor did not have the weapon that Fabre fired. As the Report explains, the prosecutor did not need the weapon to prove that Fabre was guilty of the charge.

---

[1] In his objections, Fabre withdraws his claim that his attorney was ineffective for allowing him to plead guilty to a crime that required proof that he possessed five or more firearms. Fabre explains that in bringing that claim he had relied on faulty legal analysis by another person. He also withdraws his excessive sentence claim.

[2] While Fabre contends in his objections that the Report failed to address an additional claim brought for the violation of his rights under the Fourteenth Amendment, the Report addressed the factual underpinnings of the Fourteenth Amendment claim in the context of the more specific constitutional rights which are implicated by Fabre's allegations.

Fabre does not directly respond to the Report's analysis of this claim. He does contend, however, that his attorney had his own agenda and wanted to dispose of this case quickly. He also urges that the standard set forth in United States v. Cronic, 466 U.S. 648 (1984), as well as the standard announced in Strickland v. Washington, 466 U.S. 668 (1984), should be considered in evaluating his ineffective assistance of counsel claim. Neither of these objections impacts the validity of the Report's analysis of Fabre's first claim. That claim is based on a faulty premise that the prosecutor had to have located the gun that Fabre fired to prove the possession charge at trial. As a result, this first claim must be rejected.

Fabre also objects that the Report uses case law "which the Petitioner has no way of obtaining or reviewing." As the Court of Appeals explained in Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009), there is a concern about the appearance of justice "when pro se litigants may not have financial access to case authorities that form the basis of a court's decision, thereby hampering the litigants' opportunities to understand and assert their legal rights." Id. at 78.[3] The Report cited many

---

[3] Lebron describes a local rule of the Southern District of New York that took effect on April 11, 2008, which requires counsel to provide a pro se litigant "with printed copies of decisions cited in counsel's submissions to court when those decisions are unreported or reported exclusively on computerized databases." Lebron, 557 F.3d at 78.

6

decisions that are only available electronically, and there is no reason to believe that any person incarcerated in New York State prisons would have access to those decisions.  Moreover, there is nothing in the Report to indicate that the magistrate judge took steps to provide copies of those decisions to Fabre, either by sending copies with the Report itself or requiring respondent's counsel to do so.  While this is a serious issue, in the circumstances here it does not require that the time to object to the Report be extended again so that Fabre can receive and consider the unreported decisions on which the Report relies, and possibly supplement his objections.

Fabre complains about the lack of access to the unreported decisions in his objection to the Report's discussion of his claim that his attorney should have advised him not to plead guilty since the State did not possess the firearm and therefore, he contends, could not prove at trial that Fabre once possessed the firearm, fired it, and shot the boy.  In this section of its analysis, the Report relies principally on the state court's decision on Fabre's 440 motion, quoting at length from it, and refers as well to reported U.S. Supreme Court, lower federal court, and New York State court decisions. Moreover, because Fabre has made an objection, this Court is reviewing the claim de novo and not simply reviewing the

7

Report's analysis for clear error.[4]  Thus, Fabre's claim of ineffective assistance in connection with counsel's failure to advise him about the absence of the weapon may properly be denied without providing copies of the unreported decisions cited in the Report.

2. Competence

Fabre asserts in his petition that he was mentally incompetent and could not understand the proceedings against him.  Fabre did not exhaust this claim: he did not file a direct appeal, and he did not include this claim in his 440 motion. The Report deems the claim procedurally barred and recommends that it be denied since Fabre has not shown cause for the default or demonstrated that failure to consider the claim will result in a fundamental miscarriage of justice because of his actual innocence.

Fabre does not take issue with the analysis in the Report, for instance, by responding to the procedural default analysis. He does, however, explain that he was the victim of years of abuse from persons who claimed to love him, which led to his severe depression.  He has been prescribed Ritalin since he was young, and while he appears to be fine and normal, is a "train wreck" on the inside.  Fabre implies that he was actually taking

---

[4] In the future, the magistrate judge is urged to rely solely on reported decisions, or to provide copies of any unreported decisions cited in a Report and Recommendation.

8

Ritalin at the time he entered the plea.  He acknowledges that he told the judge at that time that he was not taking "any drugs" but points out that he was not asked if he were taking prescribed medication.

Fabre's claim that he was not competent at the time of the plea must be rejected.  Fabre was required to raise this issue in his 440 motion, at the latest, but did not and he has no explanation for that failure.  In any event, the state court judge inquired directly of Fabre at the time he entered his plea whether Fabre was "under the influence of any drug[s] or alcohol today?"  If Fabre was taking any drug that interfered with his ability to comprehend the proceedings, or assist his counsel, or otherwise competently participate in the plea allocution, then this was his opportunity to identify that issue to the court.  Instead, Fabre assured the court that he was not.  He responded, "no.  No, your Honor . . . .  Definitely not, your Honor."  As the Report noted, plea allocutions are entitled to a strong presumption of veracity and are generally treated as conclusive in the face of a later attempt to contradict them.  <u>United States v. Doe</u>, 537 F.3d 204, 213 (2d Cir. 2008); <u>Adames v. United States</u>, 171 F.3d 728, 732 (2d Cir. 1999).  For these reasons, this claim must be denied as well.

3. Coercion

Fabre claims in his petition that his counsel coerced him to plead guilty (1) by advising him that the State would file the kidnapping indictment and recommend a twenty-five year sentence if Fabre did not plead guilty, (2) by sending family members to convince him to plead guilty, and (3) by informing him that if he pleaded guilty his attorney would get the Department of Correction to change his conviction to a non-violent felony.  This claim was rejected by the state court in its examination of Fabre's 440 motion.  The Report relies on that analysis, and emphasizes Fabre's statements during the plea allocution, which demonstrated that the plea was both knowing and voluntary.  As the Report explains, defendants frequently face difficult choices when entering pleas of guilty, and the fact that Fabre faced more serious charges if he did not enter the plea does not invalidate the plea.  As for affidavits which Fabre's mother and fiancée submitted, stating that they exerted their influence on Fabre to plead guilty once his attorney had explained that he could face a sentence of at least thirty years' imprisonment if he went to trial, the Report explains why such family pressure does not render the plea involuntary.

Fabre objects to this portion of the Report by arguing that the affidavits from his mother and fiancée require that his conviction be vacated unless they are patently false or

10

frivolous. Fabre relies on Blackledge v. Allison, 431 U.S. 63, 77 (1977), Machibibroda v. United States, 368 U.S. 487, 493 (1962), and Herman v. Claudy, 350 U.S. 116, 119 (1956). Fabre's objection misses the mark. The fact that those he loved urged Fabre to plead guilty to avoid the risk of a much longer sentence does not invalidate the plea on the ground that it was coerced.

The three cases on which Fabre relies do not assist him in this regard. As explained by the Blackledge Court, they establish that a petition may not be summarily dismissed if its allegations are not patently false and frivolous and are not resolved by the existing record. Blackledge, 431 U.S. at 72-73. They do not, as Fabre argues, require that a conviction be vacated in such circumstances. Id. at 82. Neither do they compel a finding that Fabre's specific circumstances rendered his plea involuntary. Indeed, the Blackledge Court noted that "any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Id. at 74.

Additionally, the three cases are distinguishable from Fabre's because the petitioners in each pointed to gaps in the record creating the need for factual development beyond the existing record, and because they all included more serious

allegations of coercion.  Machibroda involved allegations that the trial court completely failed to ask whether the petitioner's guilty plea was voluntary.  Machibroda, 368 U.S. at 488-89.  In Blackledge, a case involving a challenge to a prosecutor's promises regarding the sentence that petitioner would receive in exchange for accepting a plea bargain, no record of either the plea bargaining or sentencing hearing existed.  Blackledge, 431 U.S. at 77.  Nor did the form questions that the trial judge posed at arraignment inquire about the plea bargain, and petitioner alleged that his counsel admonished him not to disclose the plea bargain.  Id. at 76-77.  The record was therefore devoid of evidence regarding the plea bargain, and the petition could not be summarily dismissed without further development of the evidentiary record.  Id. at 78.  Similarly, in Herman v. Claudy, the Court found that material facts were in dispute regarding "petitioner's treatment prior to confession and his understanding of the nature and consequences of a guilty plea."  Herman, 350 U.S. at 120.  Herman's allegations of wrongdoing were perhaps even more severe than the allegations at issue in the other two cases.  The petitioner alleged that a police officer grabbed him by the neck and threatened to choke him if he did not confess; that the safety of his wife and daughter were threatened should he fail to confess; that he was never advised of his right to counsel

and was never represented by counsel; and that the prosecutor explained the seriousness of the 30 charges pending against him, which included a maximum sentence of 315 years.  Id. at 119.

All three of these cases, therefore, involve more serious malfeasance than Fabre alleges, including the failure to inform the accused of the right to counsel, an inadequate plea allocution, and threats of physical violence by the police. They also include allegations that could not be resolved by the existing record.  Unlike Blackledge, Machibroda, and Herman, a sufficient record exists here, including a transcript of the plea allocution and affidavits from Fabre's mother and sister, to address Fabre's petition.

4. Grand Jury Evidence

The petition argues that the evidence that was presented to the grand jury was insufficient to indict Fabre.  As the Report explains, the entry of a plea of guilty forecloses any attack on grand jury proceedings through a habeas petition.  Fabre does not object to the Report's analysis of this claim.  There being no clear error in the analysis, it is adopted.

## CONCLUSION

The June 30, 2008 petition for a writ of habeas corpus is denied.  In addition, the Court declines to issue a certificate of appealability.  Fabre has not made a substantial showing of a denial of a federal right, and appellate review is therefore not

13

warranted. <u>Love v. McCray</u>, 413 F.3d 192, 195 (2d Cir. 2005). The Court also finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. <u>Coppedge v. United States</u>, 369 U.S. 438, 445 (1962). The Clerk of Court shall dismiss this petition and close the case.

SO ORDERED:

Dated:   New York, New York
         May 26, 2009

                                            /s/ Denise Cote
                                          DENISE COTE
                                United States District Judge

Copies sent to:

Raylin Fabre
No. 06R3740
Gouverneur Correctional Facility
P.O. Box 480
Gouverneur, NY 13642


Paul M. Tarr
Assistant Attorney General
New York Office of the Attorney General
120 Broadway
New York, NY 10271